[939 NE2d 1202, 914 NYS2d 72]

In the Matter of Jazmin A., a Person Alleged to be a Juvenile Delinquent, Respondent. Presentment Agency, Appellant.

Argued October 12, 2010; decided November 17, 2010

**POINTS OF COUNSEL**

*Michael A. Cardozo, Corporation Counsel,* New York City (*Norman Corenthal* and *Kristin M. Helmers* of counsel), for appellant. I. The remand order was properly issued. (*Green v Montgomery,* 95 NY2d 693; *Matter of Quinton A.,* 49 NY2d 328; *Matter of Carmelo E.,* 57 NY2d 431; *Matter of Robert J.,* 2 NY3d

339; *Matter of Jose R.*, 83 NY2d 388; *Matter of Benjamin L.*, 92 NY2d 660; *People v Letterlough*, 86 NY2d 259; *Matter of Markim Q.*, 7 NY3d 405; *Matter of Alpheaus M.*, 168 AD2d 208; *Matter of Amanda RR.*, 230 AD2d 451.) II. The mootness doctrine does not preclude consideration of the issue of the propriety of the remand. (*Matter of Hearst Corp. v Clyne*, 50 NY2d 707; *Matter of Chenier v Richard W.*, 82 NY2d 830; *Mental Hygiene Legal Servs. v Ford*, 92 NY2d 500.)

*Legal Aid Society*, New York City (*Claire V. Merkine, Steven Banks* and *Tamara A. Steckler* of counsel), for respondent. The Family Court acted without statutory authority and in violation of due process when it remanded to detention a juvenile probationer without a violation of probation petition having been filed. (*Matter of Albano v Kirby*, 36 NY2d 526; *State of New York v Patricia II.*, 6 NY3d 160; *People v Finnegan*, 85 NY2d 53; *Pajak v Pajak*, 56 NY2d 394; *People v Assi*, 63 AD3d 19, 14 NY3d 335; *Eastern Paralyzed Veterans Assn. v Metropolitan Transp. Auth.*, 79 AD2d 516; *Matter of Waldeck v New York City Employees' Retirement Sys.*, 81 NY2d 804; *Matter of Flynn v State Ethics Commn., Dept. of State, State of N.Y.*, 208 AD2d 91, 87 NY2d 199; *Matter of Markim Q.*, 7 NY3d 405; *Matter of Silver v Silver*, 36 NY2d 324.)

**OPINION OF THE COURT**

Read, J.

On February 18, 2008, 14-year-old Jazmin A. returned home after a four-day absence, whereupon she promptly announced that she was leaving again. When her mother objected and attempted to block the door, Jazmin grabbed a kitchen knife with a six-inch blade, and threatened that "[n]o one is going to touch me." As Jazmin tried to fight her way past her mother, her stepfather intervened. Before he succeeded in wresting the knife away from her, though, Jazmin grazed his shoulder with the blade; she also bit her stepfather's arm and chest, causing him to bleed. He was taken by ambulance to a hospital, where his bite wounds were treated.

On February 25, 2008, the presentment agency filed a petition asserting that Jazmin's acts, described above as recounted in her stepfather's supporting affidavit, would, if committed by an adult, constitute various assault and weapons and menacing offenses. On February 29, 2008, Family Court adjudicated Jazmin delinquent upon her admission that she committed an act constituting unlawful possession of a weapon by a person under the age of 16, in violation of Penal Law § 265.05.

During the dispositional hearing on March 26, 2008, the judge asked Jazmin's mother whether she was willing for Jazmin to remain in her home. The mother answered that she was so long as Jazmin attended school and did not "stay or sleep out of the house."

The following colloquy ensued between the judge and Jazmin:

"THE COURT: Jazmin, do you understand that if I put you on probation, I'm going to keep a very tight [rein] on this case?

"[JAZMIN]: I understand that, ma'am.

"THE COURT: I'm going to have you come in to court for reports. If I get a report that you are not cooperating with the probation, that you're not keeping your curfew, that you are staying out overnight, or that you're not going to school, you're going to quickly find yourself in detention and on your way to a placement [upstate]. Do you understand that?

"[JAZMIN]: Yes, I understand that, ma'am."

Family Court placed Jazmin in the Bronx Juvenile Accountability Court (JAC) program for a 12-month period of probation. While in existence, JAC matched troubled youths with an array of supportive services, such as counseling, tutoring and drug treatment, as an alternative to residential placement. Unlike regular probation, JAC participants appeared regularly in Family Court for the judge to check on their progress. The order and conditions of probation imposed by Family Court required that Jazmin report to and cooperate with her probation officer; obey the lawful commands of her parents; observe curfew; attend school regularly; submit to drug and alcohol testing; and comply with the recommendations of a mental health assessment.

Jazmin arrived late to Family Court on April 16, 2008 for her first monitoring hearing. The Department of Probation's report was not favorable. Of the 13 school days since her probation began, Jazmin missed eight and was late twice. According to her mother, Jazmin "stay[ed] out all night without permission and [might] come home once or twice a week." At the conclusion of the hearing, Family Court remanded Jazmin to the custody of the Commissioner of Juvenile Justice because she "was choosing not to comply with the conditions of her

probation." Jazmin's law guardian objected to the remand on the ground that the Department of Probation had not filed a violation of probation (VOP) petition. The judge scheduled another hearing to be held nine days later, on April 25, 2008, "for probation to take whatever further steps they believe[d] [to be] appropriate." Jazmin appealed.

On May 19, 2009, the Appellate Division unanimously reversed and vacated Family Court's April 16, 2008 order of detention. The court held that "[h]aving issued an order of disposition placing [Jazmin] on probation, the Family Court lacked authority to remand her to detention in the absence of a violation of probation petition" (62 AD3d 526, 527 [1st Dept 2009]). By the time the Appellate Division handed down its decision, the Department of Probation had long since pursued a VOP petition, resulting in a new order of disposition on June 6, 2008, which placed Jazmin on 12 months of probation under the auspices of the Administration for Children's Services' Juvenile Justice Initiative, another community-based alternative to residential placement. The court noted that it nonetheless decided Jazmin's appeal because, although moot, the issue presented was "substantial and novel" and "likely to recur and evade review" (*id.*).*

The Appellate Division subsequently granted the presentment agency leave to appeal to us, certifying the following question: "Was the order of this Court, which reversed the order of

---

\* The Appellate Division explicitly declined to decide

"the hypothetical questions of whether [a properly made] motion under Family Court Act § 355.1 to stay, modify or terminate an order of probation based on change of circumstances would provide an [alternative] means of initiating proceedings to revoke probation, and whether detention would be authorized pending resolution of such a motion" (62 AD3d at 527), presumably because Family Court did not purport to act pursuant to this provision and the issue was not properly presented for appellate review.

Section 355.1 (1) (b) specifies that

"[u]pon a showing of a substantial change of circumstances, the court may on its own motion *or* on motion of the respondent *or* his parent *or* person responsible for his care: . . . . stay execution of, set aside, modify, terminate or vacate any order issued in the course of a proceeding under this article" (emphasis added).

Section 355.1 (3) further provides that "[i]f the court issues a new order of disposition under this section the date such order expires shall not be later than the expiration date of the original order." Finally, a motion for relief under section 355.1 must be pursued in accordance with the procedures specified in section 355.2.

the Family Court, properly made?" After sua sponte examining our subject matter jurisdiction, we invoke the exception to the mootness doctrine for the same reasons cited by the Appellate Division and retain jurisdiction. We now answer the certified question in the affirmative.

■ Article 3 of the Family Court Act spells out specific junctures in a delinquency proceeding when Family Court may remand a juvenile to detention—i.e., after a prepetition hearing is held in anticipation of the filing of a juvenile delinquency petition (Family Ct Act § 307.4 [4] [c]); at the "initial appearance" after a petition has been filed and "any adjournments thereof" (Family Ct Act § 320.1; *see also* Family Ct Act § 320.4 [2] [specifying what the court shall determine at the initial appearance]); after a probable cause hearing is held (Family Ct Act § 325.3 [3]); and after a VOP petition is filed (Family Ct Act § 360.3 [2] [b]). Because the Legislature did not similarly empower Family Court to order detention of a juvenile probationer before the filing of a VOP petition, we are unwilling to imply such authority in the absence of a statutory peg, as the presentment agency asks us to do. As Jazmin points out, "it is odd to suggest . . . that the Legislature intended to permit detention before a [VOP] petition has been filed when it enacted an express provision [i.e., section 360.3 (2) (b)] providing [for] a juvenile [to] be detained <u>after</u> a [VOP] petition is filed." Indeed, if Family Court possesses inherent authority to order detention at any time during the period of probation, section 360.3 (2) (b) would seem to be unnecessary. Moreover, while the presentment agency correctly points out that Family Court retains jurisdiction over a juvenile probationer until probation ends (*see* Family Ct Act § 360.1; *Matter of Markim Q.,* 7 NY3d 405 [2006]), continuing jurisdiction does not vest Family Court with the power to take actions not authorized by article 3.

■ The presentment agency also seems to suggest that Jazmin consented to detention, pointing to Family Court's statement at the dispositional hearing that a poor probation report meant that she would "quickly find [her]self in detention," followed by Jazmin's acknowledgment that she understood. This brief exchange does not amount to a waiver of a VOP petition, assuming that such a waiver could be obtained from a minor in Jazmin's situation.

■ Finally, the presentment agency argues that the monitoring hearing in this case was an "adjournment" of the "initial appearance" within the meaning of Family Court Act § 320.1,

which states that "[w]hen used in this article [3,] 'initial appearance' means the proceeding on the date the respondent first appears before the court after a petition has been filed and any adjournments thereof, for the purposes specified in section 320.4." As the Appellate Division correctly noted, however, a court appearance for checking up on compliance with probation cannot be an "adjournment" of the "initial appearance" on the underlying juvenile delinquency petition once a dispositional order has been entered.

Accordingly, the order of the Appellate Division should be affirmed, without costs, and the certified question answered in the affirmative.

Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur; Chief Judge LIPPMAN taking no part.

Order affirmed, etc.