OPINION OF THE COURT
John M. Hunt, J.
I
By order of disposition dated April 8, 2013 this court adjudicated Tilar M.[1] to be a juvenile delinquent and placed him in the custody of the Commissioner of the New York City Administration for Children’s Services (ACS) for a non-secure placement under the ACS Close to Home Initiative for a period of 11 months (Family Ct Act §§ 352.1 [1]; 352.2 [1] [c]; 353.3 [1], [2-a]).[2]
*635 The Commissioner has moved, pursuant to Family Court Act § 355.1 (2), for an order modifying the court’s order of disposition and for a transfer of the custody of the respondent to the New York State Office of Children and Family Services. In support of the motion, ACS alleges, in pertinent part, that since respondent’s placement in the Close to Home Initiative program:
“To date, ACS has thus far been unable to consistently provide services and supervision to the respondent pursuant to the order placing the respondent dated April 8, 2013 due to his frequent AWOL’ing.
“The respondent was initially placed on December 6, 2012 with New York Foundling’s non-secure placement facility located at 119 Tompkins Avenue, Staten Island, NY 10304. On December 13, 2012, the respondent left his placement without permission and while AWOL from placement was arrested on December 27, 2012.
“The respondent also left his placement without permission on January 7, 2013 and January 27, 2013, returning on February 4, 2013. On February 6, 2013 due to the respondent’s failure to remain in placement with New York [Foundling] and at the request of the respondent’s mother . . . the respondent was transferred to Boys Town non-secure placement facility located at 289 6th Avenue, Brooklyn, NY 11215.
“On February 26, 2013, the respondent again left his placement without permission. On April 9, 2013, due to the respondent’s failure to remain in placement with Boys Town, the respondent was transferred to Children’s Village-Collins Cottage non-secure placement facility located [at] 1 Echo Hill, Dobbs Ferry, NY 10522.
“While at Children’s Village, the respondent has gone AWOL on three separate occasions: on May 21, 2013, returning May 24, 2013; July 2, 2013 and July 10, 2013, returning August 10, 2013.
“ACS believes that there has been a substantial change of circumstances [and] that placement of the respondent in a limited secure level of care is appropriate and consistent with the need for protection of the community and the needs and best *636 interests of the respondent, and that respondent is therefore a person appropriate for transfer of care and custody to [the] New York State Office of Children and Family Services for placement in a limited secure setting.”
On or about May 21, 2013 this court was advised by ACS that respondent had escaped from his placement at Children’s Village (see Social Services Law § 404 [13] [d] [ii]), and the court issued an arrest warrant for the respondent the following day (Family Ct Act § 153). Although the court’s warrant directed that respondent be taken into custody and that he be produced before this court forthwith, he was merely returned to Children’s Village by ACS personnel on July 6, 2013 when he returned from being AWOL.
The court was informed of respondent’s return to Children’s Village subsequent to July 6, 2013, and on July 12, 2013 the court issued an order to show cause pursuant to Family Court Act §§ 353.3 (6) and 355.1, directing that respondent, his attorney, ACS, and the presentment agency appear so that the court could conduct an inquiry as to whether there has been a substantial change of circumstances since his placement on April 8, 2013 as well as the need for continuing the order of disposition which places respondent with ACS for the Close to Home Initiative.
The Commissioner filed this motion prior to any hearing upon the court’s own motion, and a hearing upon the ACS motion was conducted before the court on August 14, 2013.[3] ACS, the presentment agency, and the New York State Office of Children and Family Services (OCFS) appeared by counsel, and respondent and his attorney were present at the hearing. Respondent and OCFS opposed the motion, and the presentment agency took no position as to the relief sought by ACS.[4]
A
ACS called Chad Collins, the program director for the Boys Town “non-secure placement” or “NSP” program as a witness *637 in support of the motion. Mr. Collins has known Tilar M. during the period during which he had been placed at the Boys Town NSP program, which was from “February 7, 2013 through February 25, 2013.” Mr. Collins was a “family home consultant” for Boys Town during the period that respondent was placed with that agency, and in that capacity, he had regular interaction with the respondent. Collins explained that, as a family home consultant, he works directly with the resident staff who manage the group or family home, he is responsible for ensuring that the juvenile delinquents placed in the group home receive mandated or necessary services, and he also serves as a liaison between Boys Town and ACS.
Mr. Collins explained that the Boys Town Close to Home Initiative NSP program houses juvenile delinquents in non-secure group home facilities located in neighborhoods in New York City. Respondent was placed in a group home in Park Slope, Brooklyn, by Boys Town. This residence is staffed by a resident “married couple” who lived on the first floor of the house, and respondent and five other juvenile delinquents placed in the Close to Home Initiative reside in bedrooms located on the second floor of the group home. Common areas of the house are shared by agency staff and the juveniles placed in the home.
ACS had notified Boys Town that the respondent had psychological issues, a history of running away from placement, and a history of refusing to comply with prescribed psychotropic medication, at the time that he was transferred to the care of the agency. During the time that respondent was at Boys Town, he received regular counseling from Mr. Collins, as well as a social worker employed by the agency, and from a consulting therapist who is an independent service provider. Mr. Collins indicated that respondent engaged in two to three therapy sessions during the 18 days he was at Boys Town, and that he had been diagnosed with “ADHD, Oppositional-Defiant Disorder, and Conduct Disorder.” Respondent arrived at the agency with prescribed psychotropic medication which he refused to take, and he was examined by a Boys Town consulting psychiatrist on February 19, 2013 who prescribed two psychotropic medications, but respondent refused to take these medications.
According to Mr. Collins, the respondent was in the custody of Boys Town from February 7, 2013 until February 25, 2013, and he ran away from agency staff who were transporting him from an appearance in the Family Court in Queens County on February 25, 2013. The respondent never returned to the custody of *638 Boys Town and, according to Mr. Collins, he is aware that respondent was transferred to Children’s Village, another authorized agency which is under contract to provide Close to Home Initiative services, when he was captured by ACS some 31 days after he had run away from Boys Town staff on February 25th.
According to Mr. Collins, respondent’s brief stay at the Boys Town group home was somewhat turbulent. He recalled that on February 11, 2013 he was advised by agency staff that respondent was not cooperating with them and that he attempted to leave the group home. Boys Town personnel placed the respondent in a “safety hold,” which appears to involve physical restraint short of a full body or face-down prone restraint, in order to control him and to prevent him from leaving the home. After this incident, Mr. Collins met with respondent to ascertain what caused him to act out and in order to devise a “safety plan” which would ensure that he remained at the group home and that he cooperated with services.
Subsequently, on February 23, 2013, the respondent “became aggressive” while at the school located at Boys Town and he “overturned a cabinet” which nearly fell onto an agency staff member. Respondent was again placed in a “safety hold” by staff in order to control his behavior and Mr. Collins and a licensed master social worker (LMSW) on the Boys Town staff met with respondent following this incident in order to ascertain what was causing him to act out and to devise a plan to address any need for additional services or treatment. Both Mr. Collins and the agency’s LMSW engaged the respondent in counseling following the second incident and he was “cooperative” with this counseling. Mr. Collins noted that both he and the other professionals treating the respondent had access to background information concerning the respondent, including a mental status evaluation which had been provided by ACS at the time of respondent’s placement.
Boys Town staff were aware of respondent’s psychological condition, his refusal to take prescribed medication, and his history of running away from agency facilities where he had been placed based upon a prior adjudication as a person in need of supervision (PINS), and Boys Town attempted to devise a service plan to address these issues. The plan ultimately proved insufficient as the respondent finally succeeded in running away from Boys Town on February 25, 2013.
*639 B
Ajish Nair, who has been respondent’s caseworker during the time he has been placed at Children’s Village, also testified in support of the motion to modify respondent’s placement. Mr. Nair testified that respondent arrived at Children’s Village on April 9, 2013 and that he is still placed there by ACS pursuant to the Family Court orders of disposition, the most recent of which is the subject of these proceedings.
Mr. Nair explained that Children’s Village, which is located in Dobbs Ferry, Westchester County, is a multipurpose social services agency, and that the agency campus has facilities such as a residential treatment center, which is a facility for the inpatient treatment of persons less than 21 years old (see Mental Hygiene Law § 1.03 [33]), as well as facilities for children with specific behavioral problems such as fire starting, substance, and sexual offenders. Respondent was placed in a facility (cottage) designated for the treatment of juvenile delinquents who have serious emotional disturbance when he arrived at Children’s Village. Several of the agency programs have been designated specifically for juvenile delinquents who are placed there by ACS under the Close to Home Initiative program.
Mr. Nair explained that respondent was placed in one particular facility (Collins Cottage) based upon his diagnosed emotional disturbance, as this was his most prominent and pressing issue. Nevertheless, respondent received a variety of services which extended beyond treating his mental health condition, including interpersonal and psychological counseling, education at the agency’s on-campus school, individual and group counseling, and treatment for substance abuse.
Children’s Village received a file containing background information on respondent at the time he was placed with the agency, and the file contained information concerning Tilar’s most recent Close to Home Initiative placement at Boys Town, as well as reports from other agencies who had custody of the respondent during his placement as a PINS.[5]
Mr. Nair indicated that respondent was exhibiting symptoms of psychological disorder at the time he arrived at Children’s Village and a psychiatric evaluation was conducted. A psychiatrist *640 diagnosed respondent with bipolar disorder and schizoaffective disorder-N.O.S. and Ability was prescribed for him. Mr. Nair usually met with respondent at least once each week for social work therapy and case planning, but it is unclear whether the respondent was compliant with taking his prescribed medication while at the agency.
On May 10, 2013 the respondent was admitted to a local hospital for psychiatric evaluation and treatment due to his acting out when he learned that his mother could not come to visit him at Children’s Village on Mother’s Day, leading to a “suicidal gesture” which involved wrapping a bed sheet around his neck. Respondent was released from the hospital to Children’s Village on May 20, 2013 and on May 21st he ran into the woods and did not return to Children’s Village. The agency notified ACS that respondent had run away and Mr. Nair indicated that respondent did not have his prescribed medication with him when he left the agency campus. Although Children’s Village personnel searched for respondent in the Dobbs Ferry area, they were not able to locate him, and he was not seen again for three days. Mr. Nair contacted respondent’s mother to advise her that her son had run away, but she reported that she did not see Tilar during his absence from Children’s Village.
Mr. Nair testified that respondent and another juvenile delinquent who had run away from Children’s Village returned to the agency on May 24, 2013 in a taxicab which presumably brought them from the train station at Dobbs Ferry. When the cab arrived at the agency, the juveniles ran out of the cab, apparently unable to pay their fare. According to Mr. Nair, he learned that while respondent was missing from the agency he had spent his time in an abandoned house in the Bronx, which respondent called a “crack house,” and that people were using, selling, and buying narcotics at that location. Nair later became aware that respondent was smoking marijuana and drinking alcohol during the period he was AWOL.
Respondent remained at the agency from his return on May 24th until June 17, 2013, although Mr. Nair stated that respondent “was not motivated to stay in the program,” and he ran away again on June 17th. On July 6, 2013 respondent again returned to Dobbs Ferry by train and he went back to Children’s Village. Mr. Nair again spoke with the respondent and continued to find him unmotivated to participate in Close to Home Initiative services. Nair also noted that the respondent was not taking his prescribed psychiatric medication during the period he *641 was missing from the Children’s Village campus. Mr. Nair indicated that he believed that the respondent was abusing alcohol and marijuana during the period of his second escape from the agency as well.
Respondent ran away from Children’s Village again on July 10th and he was not seen again by agency staff until August 10, 2013 when his mother returned him to the campus. During the period of respondent’s third escape, July 10, 2013 to August 10, 2013, agency personnel searched for him in and around his former neighborhood in Jamaica, Queens, and they distributed missing person flyers for him in locations where he was known to frequent. Mr. Nair and another staff member visited two local police precincts and Nair also contacted Detective Dennis Seger, who has responsibility for executing warrants for juvenile delinquents in Queens, as well as respondent’s mother who had recently relocated to Brooklyn. According to Mr. Nair, he provided a copy of the ACS-issued warrant and the court’s bench warrant for respondent and a copy of the respondent’s picture to the two police precincts he visited. Nair recalled that he was told that officers would conduct a search for the respondent. In Mr. Nair’s view, the ACS-issued warrants were “not universally accepted” by the police and they appeared to give them little weight.
Mr. Nair concluded that Children’s Village was unable to address respondent’s problems during the time he had been placed with the agency due to the fact that the respondent “was gone more days than he was there” since his placement on April 9, 2013. While respondent was generally compliant while at the agency campus, his anger control issues, substance abuse issues, and psychological issues went largely untreated because the respondent refused to stay at Children’s Village. The agency offered services and therapy, and they infrequently provided close supervision to keep respondent from running away when staffing permitted, the agency had no way of restraining respondent so as to keep him on the campus. Mr. Nair also stated that the agency was unable to maintain constant close supervision of the respondent as there are not sufficient staff to do so.
Prior to the conclusion of the hearing, counsel for ACS introduced copies of all of the warrants issued by the agency for the respondent during his placement with the Close to Home Initiative program, and the court then rendered its decision.
II
“Family Court Act § 352.2 authorizes five disposi *642 tians of a youth who has been adjudicated a juvenile delinquent: conditional discharge, probation, placement with OCFS, placement in a mental hygiene facility and, in the case of a juvenile who has committed a designated felony, restrictive placement pursuant to Family Court Act § 353.5” (Matter of Robert J., 2 NY3d 339, 343 [2004]).
Additionally, Family Court Act § 352.2 authorizes the Family Court to place an adjudicated juvenile delinquent in the custody of a commissioner of social services (Family Ct Act §§ 352.2 [1] [c]; 353.3 [1]).
In 2012 the legislature amended the dispositional provisions of the juvenile delinquency statute (L 2012, ch 57, part G) when it authorized New York City to
“implement a close to home initiative to provide juvenile justice services to all adjudicated juvenile delinquents determined by a family court in such district as needing placement other than in a secure facility and to enter into contracts with any authorized agency ... to operate and maintain non-secure and limited secure facilities” (Social Services Law § 404 [1]).
OCFS approved New York City’s plan to operate a Close to Home Initiative program for juvenile delinquents placed in non-secure settings in July of 2012 (see Social Services Law § 404 [5]), and ACS began to accept juvenile delinquents for non-secure Close to Home Initiative placements as of September 1, 2012 (New York City Administration for Children’s Services, Close to Home: The First Six Months, Close to Home Overview [Mar. 2013], available at http://www.nyc.gov/html/acs/downloads/ pdf/Close%20to%20Home%206%20Month%20Report%20March %202013.pdf [accessed Aug. 16, 2013]).
In authorizing the Close to Home Initiative, the 2012 legislation modified the dispositional provisions of the juvenile delinquency statute. Specifically, the 2012 amendments eliminated the authority to place a juvenile delinquent in the legal custody of OCFS or the Department of Social Services, while ordering that physical custody of the juvenile be with a specific authorized agency or class of authorized agencies (Family Ct Act former § 353.3 [2], [3], [4] [repealed by L 2012, ch 58, part G, § 6]; see Sobie, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, 2013 Pocket Part, Family Ct Act § 353.3 at 101).
The current provisions of the placement section, Family Court Act § 353.3 (2-a), read as follows:
*643 “Notwithstanding any inconsistent provision of law to the contrary, and pursuant to subdivision two of this section in a district operating an approved juvenile justice services close to home initiative pursuant to section [404] of the social services law:
“(a) beginning on the effective date of the district’s approved plan that only covers juvenile delinquents placed in non-secure settings, the court may only place the respondent:
“(i) in the custody of the commissioner of the local social services district for placement in a non-secure level of care; or
“(ii) in the custody of the commissioner of the office of children and family services for placement in a limited secure or secure level of care.”[6]
Although court-ordered placements of adjudicated juvenile delinquents with a local commissioner of social services were permissible prior to the 2012 amendments to the Family Court Act and Social Services Law, once ACS began operating its juvenile justice Close to Home Initiative program for juvenile delinquents, ACS essentially assumed the duties of the state OCFS with respect to all children from New York City ordered to be placed in a non-secure setting by the Family Court (Social Services Law § 404 [13]).
Under the Close to Home Initiative statute, ACS is now responsible for entering into contracts with authorized agencies, such as Boys Town and Children’s Village, for the operation of non-secure and eventually limited secure facilities (Social Services Law § 404 [13] [a]); to determine where a particular juvenile delinquent is to be specifically placed, and to transfer juvenile delinquents between facilities (Social Services Law § 404 [13] [b], [c]); to apprehend juvenile delinquents who run away from a Close to Home Initiative placement (Social Services Law § 404 [13] [d]); to notify the Family Court when a juvenile delinquent escapes from a Close to Home Initiative placement (id.); to issue warrants for the apprehension and return of a juvenile delinquent who escapes from a Close to Home Initiative placement (Social Services Law § 404 [13] [e]); and to provide educa *644 tian and necessary services to juvenile delinquents placed in ACS custody (Social Services Law § 404 [13] [i], Q]; [15]).
A
The implementation of the Close to Home Initiative had no impact on the Family Court’s continuing jurisdiction over a juvenile delinquent during the period of placement, nor did it affect the court’s authority under Family Court Act § 353.3 (6) to “at any time conduct a hearing in accordance with section 355.1 of this part concerning the need for continuing a placement.” Indeed, the court invoked this provision once the court became aware that respondent had escaped from Children’s Village for the purpose of the issuance of a bench warrant for his arrest.[7]
However, the Close to Home Initiative legislation substantially amended Family Court Act § 355.1, a section which was traditionally viewed as “reflecting] the court’s continuing jurisdiction and interest in a juvenile delinquency proceeding” (Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 355.1 at 414; see e.g. Matter of Delfin A., 123 AD2d 318, 320 [1986]; Matter of Miguel P., 25 Misc 3d 805, 810 [2009]), and which allows for the granting of a new hearing, or for a stay, modification, termination, or vacatur of any order issued in the course of a juvenile delinquency proceeding “[u]pan a showing of a substantial change of circumstances” (Family Ct Act § 355.1 [1] [a], [b]; see Matter of Eugene S., 200 AD2d 574, 575 [1994]; Matter of Chaz H., 298 AD2d 983, 984 [2002]; Matter of Barry H., 309 AD2d 1147 [2003], lv denied 1 NY3d 503 [2003]; Matter of Eric S.D., 37 AD3d 1045, 1046 [2007]).
While subdivision (1) of section 355.1 remains unchanged, a new subdivision (2) was inserted into section 355.1 to account for the implementation of the Close to Home Initiative. Thus, under current Family Court Act § 355.1 (2), an order of placement issued under Family Court Act § 353.3 “may, upon a showing of a substantial change of circumstances, be set aside, modified, vacated or terminated upon motion of the commissioner of *645 social services or the office of children and family services with whom the respondent has been placed.”
While courts have utilized Family Court Act § 355.1 to modify existing orders of disposition based upon a substantial change of circumstances (Matter of Lorenzo A., 59 AD3d 441 [2009]; Matter of Shatique B., 70 AD3d 1036, 1036-1037 [2010]), it has been made clear that continuing jurisdiction over a juvenile delinquency proceeding “does not vest Family Court with the power to take actions not authorized by article 3” (Matter of Jazmin A., 15 NY3d 439, 444 [2010]). It appears from a closer examination of amended Family Court Act § 355.1 that modifications of juvenile delinquency placements from the non-secure Close to Home Initiative to a limited secure placement with OCFS are to be accomplished by the filing of a petition for that relief by ACS. This conclusion is compelled by the language of the statute which provides that “[a]n order issued under section 353.3, may ... be set aside, modified, vacated or terminated upon motion of the commissioner of social services” (Family Ct Act § 355.1 [2] [emphasis added]), as well as that “if the district determines that placement in a limited secure facility is appropriate . . . , the social services district shall file a petition to transfer the custody of the respondent to [OCFS]” (Family Ct Act § 355.1 [2] [a] [i] [emphasis added]). The legislature has thus prescribed a specific procedure for the modification of Close to Home Initiative placements, and the court is not free to disregard that procedure (Jazmin A., 15 NY3d at 444; Matter of Rayshawn P., 103 AD3d 31, 41-42 [2012]; Matter of Kareem W., 100 AD3d 565 [2012]).[8]
B
In this case the court was presented with a petition which was properly filed by the Commissioner of ACS in accordance with Family Court Act § 355.1 (2). Proper notice was provided *646 to the presentment agency, OCFS, and the attorney for the respondent. Having heard the testimony of the two witnesses, both of whom had direct contact with and responsibility for Tilar during his placement under the Close to Home Initiative, and having considered the additional evidence and the prior proceedings conducted before this court, the following constitutes the court’s decision as required by Family Court Act § 355.1 (2) (a) (i).
The evidence establishes that Tilar M. has failed to cooperate with the non-secure Close to Home Initiative placement ordered by this court on April 8, 2013.[9] ACS placed the respondent in the custody of Children’s Village, an authorized agency located in Dobbs Ferry, Westchester County, which has a contract with ACS to provide services under the Close to Home Initiative in a non-secure placement setting. Respondent arrived at Children’s Village on April 9, 2013 with an extensive history of running away from other non-secure agencies where he had been placed by ACS based upon adjudications as a person in need of supervision and as a juvenile delinquent in proceedings which preceded the juvenile delinquency case adjudicated by this court.
Documents introduced by ACS at the hearing conducted pursuant to Family Court Act § 355.1 (2) (a) (i) reflect that, during the period of his placement with the Close to Home Initiative, five escape incidents have been reported to the ACS Movement Control and Communications Unit.[10] More specifically, respondent was placed at a non-secure Close to Home Initiative agency on Staten Island on December 6, 2012, and he ran away from the agency on January 7, 2013. Respondent was subsequently transferred to Boys Town and he ran away from that agency on February 25, 2013. Following the conclusion of the juvenile delinquency case before this court respondent was transferred to Children’s Village by ACS, as the Close to Home Initiative program at Boys Town was unable to treat respondent or to keep him on its campus as testified to by Chad Collins.
*647 Respondent’s behavior and compliance with the program continued to decline after his transfer to Children’s Village. While respondent was placed in a cottage specifically intended to house emotionally disturbed juvenile delinquents, respondent’s participation in services and counseling was marginal at best. As Mr. Nair noted, by July 10, 2013 when respondent ran away from Children’s Village for the final time, he had been absent from the Children’s Village campus more days than he had been present.
While the agency attempted to treat respondent’s psychological condition and provide him with counseling and other services, and he had a 10-day admission for psychiatric evaluation and treatment while at Children’s Village, he continually refused to take the medication which had been prescribed by a psychiatrist. The biggest obstacle to respondent’s treatment by Children’s Village was his utter refusal to remain at the agency campus and to engage in the services offered by the agency.
Respondent ran away from Children’s Village on May 21, 2013, and he returned on May 24, 2013 under bizarre circumstances involving another escaped delinquent and a trip to campus by taxicab. During this period of absence, respondent apparently stayed in a “crack house” which was an abandoned building in the Bronx where people were using, selling, and purchasing drugs. Respondent admitted to smoking marijuana and drinking alcohol during this absence from the agency. Respondent ran away again on July 2, 2013 and he was missing until July 6, 2013, he stayed four days and then ran away again on July 10, 2013 and was missing for a month.
Given respondent’s refusal to remain at the three non-secure agency facilities where he was placed by ACS under the Close to Home Initiative, his history of running away when he was placed as a person in need of supervision, his refusal to cooperate with treatment for his psychological conditions, his continued use of drugs and alcohol, and his aggressive behavior while at the Boys Town non-secure facility, leads to the inescapable conclusion that the needs and best interests of Tilar and the need to protect the community from him require that he be placed in a limited secure setting with OCFS.
Both OCFS and respondent’s attorney urged that this court deny the petition and that respondent be permitted to remain in the Close to Home Initiative program. The objections stated by OCFS and the attorney for the child primarily concern whether ACS has demonstrated the existence of a substantial *648 change of circumstances within the meaning of Family Court Act § 355.1 (2). Upon this record, the court finds that ACS has indeed established a substantial change of circumstances since this court placed the respondent in a non-secure setting with the ACS Close to Home Initiative.
Continuation of the respondent in the Close to Home Initiative is not feasible as he is beyond the control of the agencies with which he has been placed, and his continuation in a non-secure setting will lead to further unauthorized absences with concomitant disruptions in his treatment program. Most notably, ACS, which is responsible for the administration of the Close to Home Initiative, has filed this motion requesting that the respondent be removed from the Close to Home Initiative program precisely because he poses a danger to himself and to the community, and he is in need of intensive treatment and supervision which, given his history of running away, requires that he be placed in a more secure and more structured setting.[11]
As noted by Professor Sobie, “[t]he ‘close to home’ remedy does not fit all cases [and] for at least a few children ‘away from home’ may be a preferable alternative” (Sobie, 2012 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 353.3, 2013 Pocket Part at 103). This is such a case.
It is therefore, ordered, that the motion filed by the Commissioner of the Administration for Children’s Services pursuant to Family Court Act § 355.1 (2) (a) (i) is granted for the reasons stated herein.

. Tilar M. is also known by the alias, “Brandon Flowers,” a name he apparently provided to police when he was arrested on the charge underlying this case. Brandon Flowers is a football player who has played cornerback for the Kansas City Chiefs of the National Football League since 2008.

. Respondent’s placement by this court was based upon a determination that he possessed a toy or imitation pistol, a misdemeanor under the New York City Administrative Code. At the time that respondent was placed by this court, he was already subject to an order of placement with the ACS Close to Home Initiative issued by another family court judge in a prior juvenile delinquency proceeding.

. The court’s motion was withdrawn upon the conclusion of the proceedings upon the motion filed by ACS.

. When the respondent was initially produced upon the court’s bench warrant, he was ordered “held in custody” by the ACS Division of Youth and Family Justice pursuant to Social Services Law § 404 (13) (d) (iii). Once ACS filed its motion pursuant to Family Court Act § 355.1 (2), the court directed respondent’s detention “in a local secure detention facility on an interim basis pending its final ruling” on the motion (Family Ct Act § 355.1 [2] [a] [iii]).

. According to Mr. Nair, the file provided to Children’s Village contained reports from Geller House, New York Foundling, and Graham Windham, each of which had custody of Tilar M. at some point during his placement as a person in need of supervision.

. Other portions of Family Court Act § 353.3 (2-a) provide for the placement of juvenile delinquents at such time as ACS is authorized to implement programs for youth placed in limited secure settings (Family Ct Act § 353.3 [2-a] [b]). As of the date of this decision, the ACS plan to operate programs for juvenile delinquents ordered to be placed in limited secure settings has not been granted approval.

. The court acted in this case, as well as other similar cases, because the court has been made aware that some law enforcement officers do not accord the “warrants” issued by the Commissioner of ACS the same respect as a bench warrant issued by a judge. While the ACS warrants are lawfully issued (Social Services Law § 404 [13] [e]), they do not constitute a judicial mandate which directs the arrest of an individual and his or her production before a court (see People v Briggs, 19 NY2d 37, 42 [1966]).

. A motion filed by the court pursuant to Family Court Act § 355.3 (6) does not authorize the issuance of a detention order (Jazmin A., 15 NY3d at 444; Rayshawn P., 103 AD3d at 43), although a juvenile who may be the subject of such a motion is already placed, which distinguishes that juvenile from a juvenile delinquent who is alleged to have violated the conditions of his or her probation. However, it should be noted that Family Court Act § 355.1 (2) (a) (iii) specifically authorizes the issuance of an order directing that a juvenile delinquent be held in “a local secure detention facility on an interim basis pending its ruling on the petition filed pursuant to this paragraph.” Thus, the filing of a petition by ACS is the event which triggers the Family Court’s authority to remand a juvenile delinquent to a local secure detention facility, pending disposition of a petition to modify placement to limited secure.

. This court expresses no opinion as to whether respondent has failed to comply with the order of disposition issued by its colleague on November 21, 2012 which places the respondent with the ACS Close to Home Initiative. This court is advised that ACS has filed a motion with respect to the November 21, 2012 order of disposition, and it has been referred to the judge who issued that order for further proceedings (Family Ct Act § 340.2 [2]).

. Because a motion made pursuant to Family Court Act § 355.1 (2) is a post-dispositional application, the evidentiary rules set forth in Family Court Act § 350.3 (1) are applicable.

. Under the procedure set forth in Family Court Act § 355.1 (2) (a) (i), the court either grants or denies the ACS motion to modify placement. If the motion is granted, the juvenile delinquent must be placed in the custody of OCFS for placement in a limited secure placement. While other placement alternatives could possibly be considered upon a motion made under Family Court Act § 355.1 (1), in this case, the Attorney for the Child’s affirmation in opposition strenuously objected to the court’s motion filed under subdivision (1). In any event, it is noted that respondent’s attorney identified no other realistic dispositional alternative for the court to consider (see Matter of Michael RR., 266 AD2d 709, 711 [1999]).